ESTADO LIBRE ASOCIADO DE PUERTO RICO
EN EL TRIBUNAL DE APELACIONES
PANEL V

| | | |
|---|---|---|
| SONIA KABA KABA<br><br>Peticionaria<br><br>v.<br><br>BETSIANNE SEBELEN CORUJO Y OTROS<br><br>Recurrido | **KLCE202401266** | *CERTIORARI* procedente del Tribunal de Primera Instancia Sala Superior de Bayamón<br><br>Civil Núm.: BY2022CV06236<br><br>Sobre: Cobro de dinero; Daños y Perjuicios |

Panel integrado por su presidente, el Juez Hernández Sánchez, el Juez Bonilla Ortiz y la Jueza Mateu Meléndez.

Bonilla Ortiz, Juez Ponente

## RESOLUCIÓN

En San Juan, Puerto Rico a 16 de enero de 2025.

Comparece ante este foro, la Sra. Sonia Kaba Kaba (señora Kaba o "la peticionaria") y solicita que revisemos una *Resolución* emitida por el Tribunal de Primera Instancia, Sala Superior de Bayamón, notificada el 3 de septiembre de 2024. Mediante el referido dictamen, el foro primario declaró *Con Lugar* la solicitud de descalificación del Lcdo. José A. Hernández Vélez, como abogado de la peticionaria.

Por los fundamentos que expondremos a continuación, **DENEGAMOS** el *certiorari* de epígrafe.

## I.

Según surge del expediente, el 7 de diciembre de 2022, la señora Kaba presentó una *Demanda* sobre cobro de dinero y daños y perjuicios en contra de la Sra. Betsianne Sebelén Corujo (señora Sebelén o "la recurrida").[1] En esencia, alegó que la recurrida estuvo

---

[1] *Demanda*, págs. 1-34 del apéndice del recurso.

residiendo en una propiedad la cual fue forzada a desocupar por virtud de una *Sentencia* emitida en el caso de desahucio BY2021CV00765. No obstante, sostuvo que, al momento de examinarla, se percató que la residencia estaba en el peor estado posible, a su vez, que removió y se apropió ilegalmente de varios bienes muebles. Por ello, solicitó que le impusieran el pago de $135,378.00, más costas, gastos y honorarios de abogados.

El 28 de abril de 2023, la señora Sebelén presentó su *Contestación a Demanda y Reconvención*.[2] En esta, alegó que la peticionaria y la familia de su ex esposo, el Sr. Jaime Javier Cols, han tenido campañas de ataques, hostigamiento y maltratos hacia su persona y su hija, incluso solicitaron la desconexión de las utilidades de agua y luz. Esbozó que, la residencia de la cual fue desalojada había sido regalada a ella y a su ex esposo. Asimismo, añadió que la señora Kaba estaba reclamando por bienes que no eran de ella. Por ello, solicitó que le devolvieran la propiedad; le impusieran a la peticionaria una cantidad no menor de $750,000.00 por concepto de daños y perjuicios; entre otros.

Por su parte, el 21 de julio de 2024, la señora Kaba presentó su *Contestación a la Reconvención*.[3] Mediante la cual, expresó, sobre la desconexión de los servicios de agua y luz, que la propiedad nunca estuvo sin servicio de energía eléctrica, y sobre el corte en el servicio de agua, que fue por un breve periodo de tiempo, por una alegada intervención indebida con el contador, no obstante que la residencia tenía cisterna.

---

[2] *Contestación a Demanda y Reconvención*, págs. 35-41 del apéndice del recurso.
[3] *Contestación a la Reconvención*, págs. 42-46 del apéndice del recurso.

En cuanto a la titularidad de la propiedad, reiteró que había sido establecida mediante *Resolución* y *Sentencia* en casos previos, y donde habían concluido que la recurrida no tenía ningún derecho sobre ella.

Luego de varias incidencias procesales, el 31 de mayo de 2024, la señora Sebelén presentó una *Demanda Contra Tercero*.[4] En síntesis, mencionó que, como parte del descubrimiento de prueba, el foro primario expidió varias órdenes dirigidas a la Autoridad de Acueductos y Alcantarillados (AAA) y a LUMA, para obtener documentos y grabaciones de audio. Al obtener la información necesaria presentó la demanda de tercero en contra de la Sra. María de Lourdes González Bergantiños (señora González), nuera de la demandante y madre del señor Cols. Planteó que de las grabaciones obtenidas surgió que la señora González fue quien personalmente solicitó el corte de los servicios de agua, haciéndose pasar por la peticionaria. Añadió que, el Lcdo. José A. Hernández Vélez (señor Hernández), abogado de la peticionaria, participó de una de las llamadas al Centro de Servicios de la AAA. Por lo que, solicitó la descalificación como representante legal de la señora Kaba.

El 3 de junio de 2024, la peticionaria presentó *Moción Urgente para Replicar a los Escritos de la Demandada […]*.[5] En esta, alegó que el Lcdo. Hernández no realizó nada impropio o ilegal cuando participó de la llamada, al contrario, que lo hizo para dar cumplimiento a las órdenes emitidas por el tribunal. Asimismo, indicó que el Lcdo. Hernández comenzó su participación luego de

---

[4] *Demanda Contra Tercero*, págs. 47-56 del apéndice del recurso.
[5] *Moción Urgente para Replicar a los Escritos de la Demandada […]*, págs. 61-75 del apéndice del recurso.

que la llamada comenzara y que la persona que la originó se identificara como la señora Kaba.

El 10 de junio de 2024, el foro primario notificó varias órdenes.[6] La primera dirigida a la recurrida, mediante la cual le ordenó a que expusiera su posición respecto al porqué debía autorizar la demanda contra tercero, puesto que, habían transcurrido dos (2) años desde que había sido radicada la demanda inicial. Además, debía exponer sus alegaciones sobre si su intención era la descalificación de la representación legal de la peticionaria, debido a las serias imputaciones éticas.

En cuanto a la segunda *Orden*,[7] dirigida a la peticionaria, en esta declaró *No Ha Lugar* a la solicitud para imponer sanciones a la representación de la parte recurrida y eliminar sus alegaciones.

Así las cosas, el 20 de junio de 2024, la señora Sebelén presentó una *Moción en Cumplimiento de Orden y en Solicitud de Descalificación*.[8] En esta, reiteró que el Lcdo. Hernández participó de una llamada telefónica, donde la señora González, ofreció y solicitó información de una cuenta de AAA, haciéndose pasar por la señora Kaba, teniendo conocimiento el licenciado que esa no era su representada. Añadió que, del expediente de la AAA no surgía alguna carta o documento en el cual la peticionaria autorizara al Lcdo. Hernández a solicitar u obtener información de su cuenta en la AAA. Es por ello, que alegó que el Lcdo. Hernández incurrió en un conflicto de interés y apariencia de conducta impropia.

---

[6] *Orden*, págs. 102-104 del apéndice del recurso.
[7] *Orden*, págs. 105-107 del apéndice del recurso.
[8] *Moción en Cumplimiento de Orden y en Solicitud de Descalificación*, págs. 108-117 del apéndice del recurso.

Así pues, solicitó la descalificación del licenciado por haber permitido y presenciado como la señora González se hizo pasar por la peticionaria, y así obtener información de una cuenta en la AAA, para la cual ninguno estaba autorizado, durante la fecha de la llamada.

El 12 de julio de 2024, la peticionaria presentó una *Réplica a "Moción en Cumplimiento de Orden y en Solicitud de Descalificación"*.[9] En esencia, arguyó que la recurrida no logró establecer que el hecho imputado al Lcdo. Hernández constituyó una razón para solicitar su descalificación.

El 3 de septiembre de 2024, el foro primario notificó la *Resolución* recurrida, en la cual dispuso lo siguiente:[10]

> Evaluados los argumentos sostenidos por las partes, así como el expediente en su totalidad, se concede la solicitud de descalificación sometida a nuestra consideración. Entendemos que los hechos relacionados con la llamada telefónica ocurrida en enero del 2022 establecen un potencial conflicto de interés del abogado de la [peticionaria] así como también una alta probabilidad de que el Lcdo. Hernández pueda ser llamado como testigo en el presente caso debido a que la controversia relacionada con la llamada telefónica en cuestión es una de las alegaciones principales de la demanda contra tercero presentada el 31 de mayo de 2024 por la [recurrida], señora Sebelén, en contra de la tercera demandada, la señora González.

En desacuerdo, el 18 de septiembre de 2024, la señora Kaba presentó una *Moción Solicitando Reconsideración*.[11] Sin embargo, el 22 de octubre de 2024, el foro primario notificó una *Resolución Interlocutoria*, en la cual la declaró *No Ha Lugar*.[12]

---

[9] *Réplica a "Moción en Cumplimiento de Orden y en Solicitud de Descalificación"*, págs. 130-139 del apéndice del recurso.
[10] *Resolución*, págs. 149-163 del apéndice del recurso.
[11] *Moción Solicitando Reconsideración*, págs. 164-172 del apéndice del recurso.
[12] *Resolución Interlocutoria*, págs. 176-177 del apéndice el recurso.

Aún inconforme el 21 de noviembre de 2024, la peticionaria presentó el recurso de epígrafe. Mediante este, sostuvo que el foro primario cometió el siguiente señalamiento de error:

> Erró el Honorable Tribunal de Primera Instancia al descalificar al Lcdo. Hernández Vélez como abogado de la parte demandante basándose en una interpretación incorrecta de los hechos y el derecho y obviando considerar otra prueba que obra en el expediente y sin celebrar una vista.

El 13 de diciembre de 2024, la recurrida presentó su *Alegato en Oposición a Petición de Certiorari.*

No obstante, el 18 de diciembre de 2024, la señora Kaba presentó una *Moción Solicitando se tenga por no presentado el alegato en Oposición de la recurrida.*

Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

**II.**

El *certiorari* es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar discrecionalmente una decisión de un tribunal inferior. *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194 (2023); *Torres González v. Zaragoza Meléndez*, 211 DPR 821 (2023); *Caribbean Orthopedics v. Medshape et al.*, 207 DPR 994, 1004 (2021). Ahora bien, tal discreción no opera en lo abstracto. Con respecto a lo anterior y para revisar los dictámenes interlocutorios del Tribunal de Primera Instancia, la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, dispone, en su parte pertinente, lo siguiente:

> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 de este apéndice o de la denegatoria

de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.

[…]

Según se desprende de la citada Regla, este foro apelativo intermedio podrá revisar órdenes interlocutorias discrecionalmente, cuando se recurre de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía o en casos de relaciones de familia o que revistan interés público, o en aquellas circunstancias en las que revisar el dictamen evitaría un irremediable fracaso de la justicia, entre otras contadas excepciones.

A esos efectos, la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40, dispone los criterios a considerar para ejercer sabia y prudentemente su decisión de atender o no las controversias ante sí. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 96-97 (2008); *BPPR v. SLG Gómez-López*, 2023 TSPR 145, 213 DPR ___ (2023); *Rivera et al. v. Arcos Dorados et al.*, supra; *Pueblo v. Rivera Montalvo,* 205 DPR 352, 372 (2020). Así, la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*, funge como complemento a la Regla 52.1 de Procedimiento Civil,

*supra*. *Torres González v. Zaragoza Meléndez*, supra. La precitada Regla dispone lo siguiente:

> El [T]ribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de certiorari o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) Si la etapa de los procedimientos en que se presenta el caso es la más propicia para su consideración.
>
> (F) Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. 4 LPRA Ap. XXII-B, R. 40.

Sin embargo, ninguno de los mencionados criterios es determinante por sí solo para este ejercicio y no constituye una lista exhaustiva. *García v. Padró*, 165 DPR 324, 335 esc. 15 (2005). Por ello, de los factores esbozados "se deduce que el foro apelativo intermedio evaluará tanto la corrección de la decisión recurrida, así como la etapa del procedimiento en que es presentada; esto, para determinar si es la más apropiada para intervenir y no ocasionar un fraccionamiento indebido o una dilación injustificada del litigio". *Torres*

*Martínez v. Torres Ghigliotty,* supra, pág. 97. (Énfasis omitido).

El Tribunal Supremo de Puerto Rico ha expresado también que, de ordinario, el tribunal revisor "no intervendrá con el ejercicio de la discreción de los tribunales de instancia, salvo que se demuestre que hubo un craso abuso de discreción, o que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial". *Zorniak Air Servs. v. Cessna Aircraft Co.,* 132 DPR 170, 181 (1992), citando a *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986). Véase, además: *Rivera y otros v. Bco. Popular*, 152 DPR 140, 155 (2000).

**III.**

En el caso de autos, la señora Kaba alega que incidió el foro primario al descalificar al Lcdo. Hernández Vélez como su abogado, al basarse en una interpretación de los hechos y del derecho, incorrecta.

Por su parte, la señora Sebelén sostiene que la descalificación del Lcdo. Hernández era necesaria, debido a que, se convirtió en un testigo de hechos, y por haber incurrido en un conflicto de interés entre su representada y la tercera demandada. Por ello, sostiene que la decisión del foro primario fue correcta en derecho, puesto que, tomó una medida preventiva y cautelar para evitar posibles violaciones al Código de Ética Profesional y asegurarse de la pureza de los procedimientos.

Luego de evaluar las mociones presentadas y el expediente ante nos, determinamos que no existe criterio

jurídico que amerite nuestra intervención con la determinación del foro primario. Es por ello, que concluimos que nuestra intervención no resulta oportuna. Siendo así y en ausencia de prueba que nos permita resolver en contrario, denegamos expedir el auto de *certiorari* que nos ocupa, al amparo de lo dispuesto en la Regla 52.1 de Procedimiento Civil, *supra*, y la Regla 40 de nuestro Reglamento, *supra*.

**IV.**

Por los fundamentos antes expuestos, **DENEGAMOS** el recurso de epígrafe.

Lo pronunció y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones